UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW FREDERICK TITTIGER,

        Plaintiff,

Case No. 1:11-cv-687

Hon. Gordon J. Quist

v.

UNKNOWN MCKEE, *et al.*,

        Defendants.

                               /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Chip Fockler, Joshua Straouse, Bradley Kline and Dustin Anderson (docket no. 13).

    **I.**    **Background**

The court previously summarized plaintiff's claims as follows:

> Plaintiff is a state prisoner incarcerated at the Bellamy Creek Correctional Facility (MSP) in Ionia, Michigan. He sues the following employees of MSP: Warden (unknown) McKee; Deputy Warden (unknown) Strotter; Deputy Warden (unknown) Youngs; Assistant Deputy Warden (ADW) (unknown) Schooly; Lieutenant (unknown) Schnyder; Inspector (unknown) Welton; Corrections Officers (unknown) Anderson, (unknown) Fokler, (unknown) Kline, (unknown) Srosse and (unknown) Bancroft; the grievance coordinators for steps I and II; Sergeant (unknown) Bennickson; and Resident Unit Officer (RUO) (unknown) Schlitter. In his pro se complaint, Plaintiff alleges that "in/or around July/Aug[ust] of 2010," he was raped by at least seven corrections officers while he was serving "hole time" in room 248. (Compl., docket #1, Page ID#6.) At the time, he was taking new pills for "moods," depression and schizophrenia. (*Id.*) Seven people dressed in black entered the cell with their faces covered in scarves. They put a needle in him, stripped him, and gave him at least five pills. Defendants Anderson and Fokler were present, laughing at Plaintiff. Plaintiff recognized them because they had previously harassed him. Anderson pulled his scarf down and "gave [Plaintiff] head" while Fokler held

> Plaintiff's right leg. (*Id.*) Plaintiff was then placed on a table and sodomized by Anderson and Fokler. Defendants Kline and Srosse were also present, as well as Officer Swarts (who is not named as a Defendant in this action).
>
> Plaintiff bled for two weeks after the incident. Plaintiff alleges that he tried to keep evidence of the incident but some unidentified officials came and took it all from him. Plaintiff sent several kites for medical attention but he was never called out for it; instead, he was told to stop lying. Plaintiff wrote grievances but nothing was done. When Plaintiff was finally seen by medical staff, he asked staff to check his anus for tearing, but he was told that it was too late and there was nothing to be done. He was called a liar and was told that inmates do not matter.
>
> Plaintiff alleges that Kline, Srosse and Swarts continued to threaten and degrade Plaintiff every day. They have also threatened to harm him. The prison warden has not moved Plaintiff or removed the corrections officers from their positions as is allegedly required by prison policies.
>
> Plaintiff further alleges that Officers Bancroft and Schlitter took property from Plaintiff, including:
>
>> Hobbycraf[t], Artwork, Radio, Headphones[,] lots of legal work, personal letters and lots of Gri[e]vances. [Plaintiff has] had many altercations with them, they never even wrote all the so called Contraband removal slip, but ever[y] single day inmate in 400 unit has had these problems[.]
>
> (Compl., Page ID#8.)

Opinion at pp. 2-3 (docket no. 6). The court subsequently dismissed all defendants except for Fockler [referred to as "Fokler"], Straouse [referred to as "Srosse"], Kline and Anderson. *Id.* at p. 11; Order For Partial Dismissal and Partial Service (docket no. 7). The court further concluded that plaintiff had stated an Eighth Amendment claim against defendants Fockler and Anderson for sexually assaulting him, and that plaintiff stated an Eighth Amendment claim against defendants Kline and Straouse because they were present during the attack and failed to guarantee plaintiff's safety. Opinion at pp. 6-7.

## II.  Defendants' motion for summary judgment

2

### A. Legal Standard

Defendants have moved for summary judgment on various grounds, including failure to exhaust administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Defendants Fockler, Straouse, Kline and Anderson are not the subject of a grievance

Defendants have identified five grievances which plaintiff exhausted through Step III while incarcerated at IBC. *See* Defendants' Brief at pp. 5-6 (docket no. 14); MDOC Prisoner Step III Grievance Report and Memorandum (docket no. 14-2); MDOC Prisoner Step III Grievance Report (docket no. 31-2). The MDOC reports list the following grievances: Grievance IBC 2010-05-1453-17a ("1453"); Grievance IBS 2010-09-2749-01b ("2749"); Grievance IBC 2010-09-2643-21c ("2643"); Grievance IBC 10-04-663-19c ("663"); and Grievance IBC 2010-08-2121-17a ("2121"). MDOC Prisoner Step III Grievance Reports (docket nos. 14-2 and 31-2). However, none of these grievances address the sexual assault which allegedly occurred in July or August of 2010. Grievance 1453 complained that Officer Kowatch denied plaintiff an opportunity to eat. *See* Grievance 1453 (docket no. 14-3). Grievance 2749 complained that too much of plaintiff's payroll was being applied to Court ordered debts. *See* Grievance 2749 (docket no. 14-4).[1] Grievance 2643

---

[1] The court notes that the copy of the Step I grievance is in large part illegible.

complained that plaintiff was not classified in accordance with his outpatient mental health treatment plan. *See* Grievance 2643 (docket no. 14-5).[2] Grievance 663 complained that plaintiff's headphones and magazines were improperly confiscated. *See* Grievance 663 (docket no. 14-6). Finally, Grievance 2121 complained that Officer LaPointe had destroyed various items of plaintiff's personal property. *See* Grievance 2121 (docket no. 14-7).

Plaintiff has filed various motions and other papers in this action which were difficult to decipher. After reviewing his submissions, the court identified three papers which were effectively responses to defendants' motion for summary judgment. Those papers appear in the court file at docket no. 17 (filed on January 13, 2012 and consisting of 44 pages), docket no. 19 (filed on January 25, 2012 and consisting of 31 pages), and docket no. 21 (filed on January 25, 2012 and consisting of 1 page). *See* Order (docket no. 30). While these three responses oppose defendants' motion for summary judgment, none of the responses rebut defendants' claim or the MDOC records which reflect that plaintiff failed to exhaust a grievance related to the alleged sexual assault.

Based on this record, plaintiff has failed to properly exhaust a grievance against defendants Fockler, Straouse, Kline and Anderson. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, these four remaining defendants are entitled to summary judgment with respect to plaintiff's complaint.

---

[2] The court notes that the copy of the Step I grievance is in large part illegible.

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by the four remaining defendants, Chip Fockler, Joshua Straouse, Bradley Kline and Dustin Anderson (docket no. 13) be **GRANTED** and that this action be **DISMISSED**.


Dated:  July 30, 2012                                              /s/ Hugh W. Brenneman, Jr.
                                                                              HUGH W. BRENNEMAN, JR.
                                                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).